**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

---------------------------------------------------------------
PRESBY ENVIRONMENTAL, INC.          )
                                    )
          V.                        )          CASE NO. 13-CV-355-SM
                                    )
ADVANCED DRAINAGE SYSTEMS, INC.     )
---------------------------------------------------------------

## MEMORANDUM IN SUPPORT OF DEFENDANT ADVANCED DRAINAGE SYSTEMS, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS

### I.  INTRODUCTION

ADS and Presby have been involved in various disputes over many years regarding the degree of similarity between their competing products for in-ground wastewater disposal, including a lawsuit that Presby filed in 2008, *Presby Environmental, Inc. v. Advanced Drainage Systems, Inc.*, D.N.H. Case No. 1:08-CV-00434-JL.  ADS thought it had finally resolved those disputes when the parties entered into a Settlement Agreement in 2009.  But Presby has evidently decided that the Settlement was not restrictive enough, and now seeks to use this lawsuit to rewrite the terms of the parties' agreement and minimize any competitor who would seek to threaten its very substantial market share.  That effort fails, however, because Presby has not asserted any valid claims for relief.

Nowhere is Presby's anticompetitive intent clearer than in the Second Claim for Relief seeking damages under the Lanham Act.  Presby's skeletal, conclusory assertions lack any supporting factual allegations and fail to present any plausible claim for relief.  Indeed, none of the conduct alleged in the Complaint can support a Lanham Act claim.  Presby does not, for example, allege that ADS misrepresented the origins, affiliation, or endorsement of the parties' respective products, or that ADS made any statements that created actual confusion among

purchasers on those issues.  Instead, Presby alleges that ADS made incorrect comparisons of the products' features and performance in submissions to state regulatory agencies.  The law is clear that such statements are not actionable under the Lanham Act.

Presby's First Claim for Relief for breach of the 2009 Settlement Agreement also fails as a matter of law.  The Settlement Agreement prohibits ADS from claiming "in the marketplace" that the parties' products were "functionally equivalent."  Presby has not, however, alleged that ADS made any statements at all "in the marketplace" that could run afoul of that prohibition—all of the alleged statements were made to regulators.  Likewise, Presby has not alleged any instance in which ADS itself asserted that the parties' products were "functionally equivalent."  Instead, Presby seeks to expand the Settlement beyond its plain terms to prohibit ADS from making <u>any</u> kind of comparison between the products.  That is not what the parties agreed to and that is not what the plain language of the Settlement Agreement says.

Presby also seeks to expand another provision of the Settlement Agreement that prohibits ADS from claiming to regulatory agencies that data from tests conducted on Presby's product is applicable to ADS's product.  Presby does not allege any instance where ADS actually made such a claim, and instead alleges that ADS in effect violated that provision by submitting the regulatory documentation from other states to the States of Vermont and Indiana.  However, Presby ignores the fact that ADS was legally required to submit those documents to the regulators, and in any event, the fact that ADS provided those documents to regulators as alleged in the Complaint does not violate the Settlement Agreement.

Because both of Presby's claims fail as a matter of law, the Court should grant this Motion and dismiss the Complaint under Civil Rule 12(c).

## II.  FACTUAL BACKGROUND

There are relatively few facts that pertain to this Motion.  For present purposes, ADS will treat the allegations in the Complaint as true.

ADS and Presby offer competing in-ground wastewater treatment systems.  (Complaint ¶¶7-8).  ADS's product is known as the GEO-Flow System ("GEO-Flow"), and Presby's product is known as the "Enviro-Septic® System" ("Enviro-Septic").  (*Id.*)  These products are generally regulated by state environmental agencies, and the present lawsuit arises out of proceedings before those agencies and prior litigation between the parties, *Presby Environmental, Inc. v. Advanced Drainage Systems, Inc.*, D.N.H. Case No. 1:08-CV-00434-JL.

### A.  Prior Proceedings And Settlement

In its 2008 lawsuit, Presby took issue with ADS's administrative filings with the New Hampshire Department of Environmental Services ("NH DES").  In particular, Presby claimed that ADS sought regulatory approval for GEO-Flow based on data from tests that had been conducted on Enviro-Septic.  (*See* Complaint ¶¶ 12-14).  Presby complained that ADS commissioned a report (the "Otis Report") comparing the two products, and then used that report to argue that (1) the products were "functionally equivalent," and (2) the test results relating to Enviro-Septic were therefore applicable to GEO-Flow.  (*Id.*)

The NH DES issued a Decision on July 18, 2007 that approved GEO-Flow based, in part, on a comparison to Enviro-Septic.  (*See* Complaint ¶ 21).  NH DES issued a subsequent Decision on December 9, 2007 that superseded the July 18, 2007 Decision.  (*See* Complaint ¶22).  The subsequent Decision also approved GEO-Flow, but was not based on a comparison of GEO-Flow to Enviro-Septic.  (*Id.*)  Presby nevertheless continued to object to the NH DES Decision and ADS's regulatory submissions in both the administrative proceedings and in its 2008 lawsuit.

The parties' disputes were resolved by a May 20, 2009 Settlement Agreement.[1] (Complaint ¶ 16).  Presby agreed to withdraw its objections in the NH DES proceedings and dismiss its lawsuit against ADS.  (Settlement Agreement ¶¶ 4, 6).  In exchange, ADS agreed that it would "not represent in the marketplace that Geo-Flow is the 'functional equivalent' of Enviro-Septic," and agreed that in "regulatory or approval processes . . . it will not use any test data relative to Enviro-Septic, as though such data were applicable to Geo-Flow."  (Complaint ¶¶ 17-18, 39; Settlement Agreement ¶¶ 1, 3).

### B.  Subsequent Regulatory Proceedings

After the settlement in 2009, ADS continued to seek regulatory approval for GEO-Flow in several other states, including Vermont and Indiana.  (*See* Complaint ¶¶ 19, 32).  Presby now claims that in the course of those proceedings, ADS violated the Settlement Agreement.  But Presby does not allege any instance in which ADS actually engaged in any prohibited conduct.  Instead, Presby alleges that by extension and analogy, ADS's statements and submissions were tantamount to a violation of the settlement.

For example, Presby does not allege that ADS actually claimed that the parties' respective products were "functionally equivalent" after the Settlement Agreement was signed.  Presby instead alleges that ADS improperly compared features of the products, such as "system sizing."  (Complaint ¶¶ 26-27, 33-34).  But the Settlement Agreement does not prohibit all comparisons of the parties' products.  And furthermore, the Settlement Agreement only prohibits

---

[1] Presby did not attach a copy of the Settlement Agreement to the Complaint, but the key provisions are summarized in paragraphs 17 and 18.  For the Court's convenience, ADS submits a copy of the Settlement Agreement under seal as Exhibit A.  Moreover, although this Motion does not rely on any aspect of the Settlement Agreement that is not summarized in the Complaint, the Court may consider the Settlement Agreement because Presby references it in the Complaint and it forms part of the basis for its claims.  *Moore v. Mortg. Elec. Registration Sys.*, 848 F. Supp. 2d 107, 124 n.9 (D.N.H. 2012) ("The court may consider this letter, which is expressly referenced in the complaint and forms part of the basis for the Moores' claims, without converting the motion to dismiss into a motion for summary judgment.").

claims of "functional equivalence" "in the marketplace," and Presby does not allege that ADS made any improper statements "in the marketplace."

Similarly, Presby does not allege any instance in which ADS claimed that the test data for Enviro-Septic was applicable to GEO-Flow.  Presby instead complains that ADS provided Vermont and Indiana regulators with materials from the prior regulatory proceedings in New Hampshire, and the NH DES had initially relied on test data relating to Enviro-Septic. (Complaint ¶¶ 21, 28-29, 32).  Presby ignores the fact, discussed further below, that Indiana and Vermont <u>required</u> ADS to submit these prior regulatory materials.   Furthermore, ADS's submission of those documents does not violate the Settlement Agreement because in doing so ADS did not claim that the Enviro-Septic test data was applicable to GEO-Flow.  In sum, Presby has not alleged any instance where ADS violated the plain terms of the Settlement Agreement, yet it now brings claims for breach of contract and violations of the Lanham Act.

### III. LAW AND ARGUMENT

#### A.  Standard of Review

The standard for evaluating a Rule 12(c) motion for judgment on the pleadings is essentially the same as that for deciding a Rule 12(b)(6) motion.  *Balsamo v. Univ. Sys. of N.H.*, 2011 U.S. Dist. LEXIS 113321, *4 (D.N.H. September 30, 2011).  In deciding such a motion, the court views the facts contained in the pleadings in the light most favorable to the non-movant and draws all reasonable inferences in their favor.  *Id.* (citing *Zipperer v. Raytheon Co., Inc.*, 493 F.3d 50, 53 (1st Cir. 2007)).  "Judgment on the pleadings is proper 'only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment.'"  *Id.* (quoting *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 54 (1st Cir. 2006)).  Here, both of Presby's claims fail as a matter of law and should be dismissed under Rule 12(c).

**B.  The Second Claim for Relief Fails To State A Claim Under The Lanham Act.**

Presby's Second Claim for Relief alleges a violation of the Lanham Act, 15 U.S.C. § 1125.  This claim not only fails to satisfy the pleading requirements under the Civil Rules, Presby has also failed to allege that ADS engaged in any conduct that could support a claim under the Lanham Act.  The Second Claim for Relief should therefore be dismissed.

**1.  The Lanham Act Claim Does Not Satisfy The Pleading Requirements Under The Civil Rules.**

Presby's Second Claim for Relief is a bare recitation of (some of) the elements of a claim under the Lanham Act.  These scant allegations do not satisfy the pleading requirements under the Civil Rules and warrant dismissal of the Lanham Act claim.

While the Civil Rules generally impose a notice-pleading standard, the Supreme Court has made it clear that a plaintiff does not state a valid claim by simply parroting the elements of a cause of action.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  To avoid dismissal, a plaintiff must make factual allegations sufficient to "state a claim to relief that is plausible on its face." *Balsamo,* 2011 U.S. Dist. LEXIS 113321, at *4 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is "facially plausible when it pleads 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (citing *Iqbal*, *supra*).

Where, as here, a complaint merely recites conclusory allegations tracking the elements of a Lanham Act claim, courts do not hesitate to dismiss the claim as speculative.  *See, e.g.*, *Vedder Software Group Ltd. v. Ins. Servs. Office*, 2013 U.S. App. LEXIS 21118, *7 (2d Cir. Oct. 18, 2013) (dismissing Lanham Act claim based on "bare assertions" regarding each element);

*Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 611 (6th Cir. 2009) ("[A] conclusory and 'formulaic recitation' of the elements of a trademark infringement cause of action is insufficient to survive a motion to dismiss.") (citing *Iqbal, supra*); *Gelicity UK Ltd. v. Jell-E-Bath, Inc.*, 2013 U.S. Dist. LEXIS 92236, *9-10 (E.D.N.Y. July 1, 2013) (dismissing Lanham Act claim that merely recited elements).

Presby's Second Claim for Relief completely fails these pleading requirements.  There are only four operative paragraphs in the Second Claim for Relief, and all of them offer only conclusory, speculative allegations:

- Paragraph 46 purports to describe the scope of Section 43(a) of the Lanham Act.  This paragraph is purely an assertion of law and provides no support for Presby's claim.  *Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

- Paragraph 47 summarily alleges: "By its acts described above, ADS has violated Section 43(a) of the Lanham Act."  This conclusory assertion does not remotely approach the standards required by *Twombly* and *Iqbal*.  There is no indication as to what alleged statements or representations form the basis for this assertion, or what aspect of the Lanham Act ADS supposedly violated.[2]

- In paragraph 48, Presby claims that it has standing under the Lanham Act because it "is being harmed both directly and indirectly by ADS's violative acts."  There are, however, no factual allegations describing how Presby has been supposedly harmed.  As such, this assertion is entirely speculative and unsupported.[3]

---

[2] As discussed below, Section 43(a) of the Lanham Act encompasses several different types of claims, and Presby offers no indication as to which type of claim it intends to pursue.

[3] For the same reason, Presby's claim for damages in its breach of contract claim is entirely speculative and should be dismissed.  *Kassner v. Kadlec Reg'l Med. Ctr.*, 2012 U.S. Dist. LEXIS 19406, *23 (E.D. Wash. Feb. 15, 2012)

- Paragraph 49 similarly alleges that Presby is entitled to relief, including actual damages, for its supposed injuries. This Court has made clear that in order "[t]o receive monetary relief based upon its damages, the plaintiff must show actual harm, which may be lost sales or loss of good will." *Eckel Indus. v. Primary Bank*, 26 F. Supp. 2d 313, 317 (D.N.H. 1998) (granting summary judgment in defendant's favor). Once again, this paragraph is purely speculative because the Complaint does not contain any factual allegations to support the notion that Presby lost any sales or good will at all, much less that any purported injuries were caused by ADS.

Not only are Presby's allegations speculative, Presby has entirely overlooked other essential elements of a Lanham Act claim. For example, "[t]he key element in any trademark infringement action is likelihood of <u>consumer confusion</u>." *Polar Corp. v. PepsiCo, Inc.*, 789 F. Supp. 2d 219, 227 (D. Mass. 2011) (citations omitted, emphasis added); *see also Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 610 (6th Cir. 2009) ("The touchstone of liability [for trademark infringement] is whether the defendant's use of the disputed mark is likely to cause confusion <u>among consumers</u> regarding the origin of the goods offered by the parties.") (emphasis added).

The Complaint fails to allege any consumer confusion. In fact, Presby does not allege that ADS made any statements <u>at all</u> to consumers. Rather, all of the statements alleged in the Complaint were made to <u>regulatory agencies</u>, and such statements cannot support any plausible claim of consumer confusion. *See Bavarian Nordic A/S v. Acambis, Inc.*, 486 F. Supp. 2d 354, 366 (D. Del. 2007) (no consumer confusion where the allegations stemmed from alleged misrepresentations to the U.S. Government, as opposed to consumers); *see also Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 311 (1st Cir. 2002) ("[A] district court

---

(dismissing breach of contract claim as speculative where the plaintiff "makes only a bare allegation of damages as to his breach of contract claim" without supporting facts).

may decide whether a likelihood of confusion exists on the face of the pleadings and dismiss a complaint '[if] the court determines as a matter of law from the pleadings that the goods are unrelated and confusion is unlikely.'") (citing *Murray v. Cable Nat'l Broad. Co*., 86 F.3d 858, 860 (9th Cir. 1996)); *Community Network Servs. v. IDB Communications Group*, 1996 U.S. Dist. LEXIS 1129, *9 (S.D.N.Y. Feb. 2, 1996) (granting dismissal where the complaint did not allege any attempt by defendants to "confuse any customer into believing any service provided by [defendants] was authorized or otherwise affiliated with CNS").

Presby's conclusory Lanham Act claim does not remotely approach the standards required by *Twombly* and *Iqbal*.  It is simply a bald assertion that some unidentified conduct by ADS violated some aspect of the Lanham Act, without any factual allegations to support that assertion.  Because Plaintiff has failed to plead a plausible claim for relief, the Lanham Act claim should be dismissed.

**2.   The Complaint Does Not Allege That ADS Made Any Statements That Are Actionable Under The Lanham Act.**

There are two broad categories of conduct prohibited by the Lanham Act: false association and false advertising.  *L.S. Heath & Son v. At & T Info. Sys.*, 9 F.3d 561, 575 (7th Cir. 1993).  Presby's deficient pleading fails to identify which type of Lanham Act claim Presby intends to pursue, but the outcome is the same either way.  Presby's claim fails as a matter of law because <u>none</u> of the statements alleged in the Complaint can support a claim under either prong of the Lanham Act.

**a.  The Statements Alleged In The Complaint Cannot Support A False Association Claim Under The Lanham Act.**

The first aspect of the Lanham Act prohibits "false representations concerning the origin, association or endorsement of goods or services through the wrongful use of another's distinctive mark, name, trade dress or other device."  *Id.*; *see* 15 U.S.C. § 1125(a)(1)(A).  The ultimate question in a false association claim is whether the defendant's conduct "is likely to cause consumer confusion."  *1-800 Contacts, Inc. v. Lens.Com, Inc.*, 722 F.3d 1229, 1238 (10th Cir. 2013).  More specifically, a false association claim requires confusion as to the origin of the goods or "a mistaken belief in common sponsorship or affiliation."  *Id*. at 1239.

A false association claim does <u>not</u> extend to every alleged misstatement about a competing product.  *August Storck K.G. v. Nabisco, Inc.*, 59 F.3d 616, 618 (7th Cir. 1995) ("A use of a rival's mark that does not engender confusion about origin or quality is therefore permissible."); *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003) (the phrase "origin of goods" "refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods").  For example, in *Tao of Sys. Integration v. Analytical Servs. & Materials, Inc.*, 299 F. Supp. 2d 565 (E.D. Va. 2004), the court dismissed a Lanham Act claim where the plaintiff alleged that the defendant misrepresented its ownership of intellectual property when submitting a project proposal to NASA.  The court found the statements were not actionable because they did not allege any confusion regarding the origins or associations of the actual products.  *Id*. at 568.  Similarly, the court in *Tecnomatic, S.p.A. v. Remy, Inc.*, 2012 U.S. Dist. LEXIS 86866 (S.D. Ind. June 22, 2012), dismissed a Lanham Act claim where the plaintiff alleged that the defendant misappropriated its technology and falsely claimed to have created its own product in seeking a

grant from the United States Department of Energy.  *Id.* at *58-59.  That alleged misconduct was not actionable under the Lanham Act because the plaintiff failed to allege that the defendant made any statements that could have caused consumer confusion regarding the association or endorsement of the products.  *Id.*

Here, Presby's Complaint does not allege any facts that could support a false association claim under the Lanham Act.  All of the statements alleged in the Complaint involve supposedly incorrect factual comparisons between the performance or characteristics of each company's respective product.  None of those alleged statements involve any misrepresentations regarding the origins or affiliation between GEO-Flow and Enviro-Septic, and Presby does not allege any consumer confusion on those issues.  To the contrary, even the allegations confirm that ADS identified the two systems as <u>competitors</u>.  (Complaint ¶¶ 34, 35).  Accordingly, the statements alleged in the Complaint, even if accepted as true, do not give rise to a false association claim.

**b.  The Statements Alleged In The Complaint Cannot Support A False Advertising Claim Under The Lanham Act.**

The second aspect of the Lanham Act prohibits "false representations in advertising concerning the qualities of goods or services."  *L.S. Heath & Son*, 9 F.3d at 575.  As its name suggests, a false advertising claim is limited to statements made "in commercial advertising or promotion."  15 U.S.C. § 1125(a)(1)(B); *see Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 56-58 (2d Cir. 2002) (dismissing Lanham Act claim where statements were not made in commercial advertising or promotion).  Most courts have adopted a four-part test to determine if a statement is made in "commercial advertising or promotion:"

[T]he contested representations must be "(1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy

defendant's goods or services"; and, (4) although representations less formal than those made as part of a classic advertising campaign may suffice, they must be disseminated sufficiently to the relevant purchasing public.

>    *Id.* at 56.[4]

Courts have consistently held that statements made to regulatory agencies are <u>not</u> "commercial advertising or promotion" because they are not being made to the public in order to influence customers to buy their products.  *See, e.g.*, *Radolf v. Univ. of Conn.*, 364 F. Supp. 2d 204, 222 (D. Conn. 2005) (dismissing false advertising claim because "the Court cannot see how the submission of an academic research proposal to a government funding agency constitutes 'commercial advertising or promotion'"); *In re Warfarin Sodium Antitrust Litig.*, 1998 U.S. Dist. LEXIS 19555, *42 n. 13 (D.Del. Dec. 7, 1998) (rev'd on other grounds) ("Defendant's petitions to the FDA, the USP, and those state agencies that merely set standards governing the bioequivalency of generic drugs do not fall within this definition. Plaintiff has not alleged, nor could it, that any statements made to these regulatory bodies proposed a commercial transaction."); *see also Caldon, Inc. v. Advanced Measurement & Analysis Group, Inc.*, 515 F. Supp. 2d 565, 578-579 (W.D. Pa. 2007) ("[M]isrepresentations made . . . only in regulatory submissions do not qualify as commercial speech under the Lanham Act.").

Here, Presby has not alleged any statements that could support a false advertising claim. As noted above, <u>all of the statements alleged in the Complaint were made to regulatory agencies as part of the process of seeking approval for GEO-Flow</u>.  Those statements were not made to the purchasing public, did not propose any commercial transactions, and did not attempt to influence any consumer to purchase GEO-Flow.  Rather, Presby alleges that the statements were made "to

---

[4] The first element, "commercial speech," tracks the "commercial speech" doctrine under the First Amendment, which generally defines commercial speech as that which "proposes a commercial transaction."  *See Procter & Gamble Co. v. Haugen*, 222 F.3d 1262, 1274 (10th Cir. 2000).

secure an approval from the Vermont DEC."  (Complaint ¶ 27).  Those alleged statements are not "commercial advertising or promotion" and cannot be the basis for a false advertising claim.

Because none of the statements alleged in the Complaint support a claim under either the "false association" or "false advertising" prongs of the Lanham Act, the Second Claim for Relief fails as a matter of law and should be dismissed.

**C. The First Claim For Relief Fails To State A Cognizable Claim For Breach Of Contract.**

Presby's First Claim for Relief alleges that ADS's statements to regulatory agencies breached the parties' 2009 Settlement Agreement—specifically, the first and third paragraphs of the Settlement Agreement.  However, Presby has not stated a valid claim for the breach of <u>either</u> of these provisions, and as such its First Claim for Relief fails entirely as a matter of law.

**1.  Presby Has Not Alleged A Breach Of The First Paragraph Of The Settlement Agreement.**

Most of Presby's allegations are directed at the first paragraph of the Settlement Agreement, which states in pertinent part that "ADS will not represent <u>in the marketplace</u> that Geo-Flow is the '<u>functional equivalent</u>' of Enviro-Septic" (emphasis added).  (*See* Complaint ¶¶ 17, 39-40).  Presby fails to allege a violation of this provision for two separate and independent reasons.  First, the prohibition in the first paragraph is limited to statements "in the marketplace," and Presby has not alleged that ADS made any statements in the marketplace. Second, the first paragraph only prohibits ADS from describing the parties' products as "functionally equivalent," but Presby mistakenly assumes that this language prohibits <u>every</u> kind of comparison between the products.  Both of these defects raise issues of contract interpretation, which is an issue of law and is therefore an appropriate basis for dismissal.  *Audette v.*

*Cummings*, 82 A.3d 1269, 1273 (N.H. 2013) ("The interpretation of a contract is a question of law…").

### a.   Presby Does Not Allege That ADS Made Any Statements "In The Marketplace."

The Settlement Agreement explicitly limits the prohibition in the first paragraph to statements made "in the marketplace."  The word "marketplace" is not ambiguous, and the only reasonable interpretation of this phrase is that it <u>excludes</u> statements to regulatory agencies, which are the only statements alleged in the Complaint.

Under New Hampshire law[5], words in contracts are to be given their "reasonable meaning, considering the circumstances and the context in which the agreement was negotiated, and reading the document as a whole."  *Id.* (citation omitted).  The ordinary meaning of "marketplace" is a "[p]lace of commercial activity in which articles are bought and sold." BLACK'S LAW DICTIONARY at 874 (5th ed. 1979); *see Nextep Sys. v. OTG Mgmt.*, 2011 U.S. Dist. LEXIS 100336, *31 (E.D. Mich. Sept. 7, 2011).  This ordinary definition excludes regulatory proceedings, where no goods are bought or sold.

That ordinary definition is reinforced by the other provisions in the Settlement Agreement.  The rest of the first paragraph is directed to "advertising" and "marketing" of the products and to representations by ADS's distributors to "purchasers or potential purchasers of Geo-Flow."  All of these terms are directed to sales activity, not regulatory processes.  Indeed, when the parties intended the Settlement Agreement to apply to regulatory processes, they made that intent explicit.  For example, the third paragraph of the Settlement Agreement specifically addresses "regulatory or approval processes regarding the use and approval of Geo-Flow."  Thus, the parties drew a clear contrast between the prohibitions in the third paragraph (which apply to regulatory proceedings) and the first paragraph (which do not).

---

[5] The Settlement Agreement provides that it is to be governed by New Hampshire law.  (Settlement Agreement ¶ 7).

Here, Presby has not alleged that ADS made any statements "in the marketplace."  Every statement alleged in the Complaint was made to a regulatory agency.  Indeed, Presby's breach of contract claim is limited to ADS's alleged "representations to the Vermont DEC" and "representations to the I[ndiana]SDH Environmental Public Health Division."  (Complaint ¶¶ 40-41).  There are no goods being bought or sold in those regulatory proceedings, and to interpret the phrase "in the marketplace" to encompass these regulatory proceedings would effectively read that language out of the Settlement Agreement.  4 W. Jaeger, WILLISTON ON CONTRACTS § 601, at 310 (3d ed. 1961) ("To ascertain and to give effect to the true intention of the parties the courts will examine and consider the entire writing, seeking as best they can to harmonize and to give effect to all the provisions of the contract so that none will be rendered meaningless.")

As such, just as ADS's alleged statements to regulators are not "commercial advertising or promotion" for purposes of the Lanham Act, they are not statements made "in the marketplace" for purposes of the Settlement Agreement, and cannot form the basis for a breach of the first paragraph of that Agreement.

**b. Presby Does Not Allege That ADS Represented The Parties' Products As "Functionally Equivalent."**

Presby's claim for breach of the first paragraph of the Settlement Agreement also fails because Presby has not alleged that ADS actually claimed that the parties' products were "functionally equivalent" after the Settlement Agreement was signed.

The prohibition in the first paragraph of the Settlement Agreement is specific.  It states that "ADS will not represent in the marketplace that Geo-Flow is the '<u>functional equivalent</u>' of Enviro-Septic" (emphasis added).   The use of quotations around the phrase "functional

equivalent" was obviously intended to limit the prohibition to that particular use of words.  The Settlement Agreement does <u>not</u> say that ADS cannot make any comparisons between the two products.  Had the parties intended to include such a prohibition they could have done so.  Instead, they limited the first paragraph to claims of "functional equivalence."

Here, Presby does not allege even a single instance in which ADS claimed that the parties' products were "functionally equivalent" after the Settlement Agreement was signed.  Presby instead attempts to re-characterize ADS's alleged conduct as <u>tantamount</u> to claiming that the products were "functionally equivalent."  But the actual conduct that Presby alleges does not violate the Settlement Agreement, and Presby cannot rely on its re-characterizations of the parties' agreement to stretch the language of the Settlement Agreement beyond its plain meaning.

For example, Presby alleges that ADS argued to the Vermont DEC that the "GEO-Flow system is approved for use in New Hampshire at the <u>same sizing criteria</u> as that allowed for the PEI-manufactured system."  (Complaint ¶ 26 (emphasis added)).  The Settlement Agreement only prohibits claims of "functional equivalence"—it does not prohibit ADS from accurately noting the fact that the NH DES approved both parties' products at the "same sizing criteria."

Presby similarly alleges that in 2009 ADS provided the Vermont DEC with "various application materials, including a superseded, null and void July 18, 2007 Decision by the [NH DES], which <u>compared</u> Enviro-Septic and Geo-Flow."  (Complaint ¶ 21 (emphasis added)).  Again, the Settlement does not prohibit ADS from making "comparisons" between the products.  Moreover, by providing Vermont DEC with the prior NH DES decision, ADS was not claiming the products were "functionally equivalent," it was simply providing a copy of all regulatory approvals from other states—<u>as Vermont law explicitly requires</u>.  Code of Vermont Rules 12-

033-001 at § 1-1004(d)(1)(A) ("The application form shall require the following information . . . Authorizations from . . . Other states . . . ."); *id.* at § 1-1004(k)(2)(C) ("The Secretary shall consider all of the information available and its reliability as follows…recommendations from other states based on use of a particular system or product that has been installed in a variety of situations representative of Vermont's soils and climate . . . .").

Presby also criticizes ADS's references to the NH DES proceedings in a 2012 communication with the Vermont DEC.  According to the Complaint, "ADS made specific reference to the initial 2007 and 2008 [NH DES] approvals granted to GEO-Flow based on 'functional equivalency.'"  (Complaint ¶ 25).  The fact that ADS referred to the prior NH DES approvals in that document does not mean ADS was claiming the products were "functionally equivalent."  Indeed, Presby even concedes that in this document ADS merely "describes the proceedings in New Hampshire"—not that ADS was affirmatively arguing for "functional equivalence" in Vermont.  (*Id.*).

In sum, Presby has failed to allege even a single instance in which, after the Settlement Agreement was signed, ADS claimed that the parties' products were "functionally equivalent"— much less that ADS did so "in the marketplace."  Presby has therefore failed to state a claim for breach of the first paragraph of the Settlement Agreement.

**2.  Presby Has Not Alleged A Breach Of The Third Paragraph Of The Settlement Agreement.**

As discussed above, the third paragraph of the Settlement Agreement governs statements in the regulatory process.  This provision contains two different clauses, and Presby does not allege a single instance in which ADS violated either clause.

The first clause states that ADS "will not use any test data relative to Enviro-Septic, as though such data were applicable to Geo-Flow."  (Settlement Agreement ¶ 3; *see* Complaint ¶ 18).  The Complaint does not allege that ADS submitted or even cited any Enviro-Septic test data to any regulatory agency after the Settlement Agreement was signed.  Instead, Presby alleges that that ADS (a) provided to the Vermont DEC and the Indiana SDH the NH DEP's initial July 17, 2007 Decision approving GEO-Flow based on a comparison with Enviro-Septic (Complaint ¶ 21, 32), and (b) provided the Vermont DEC with the Otis Report, which had previously been submitted to the NH DEP as part of ADS's application in that state.  (Complaint ¶ 28).

As noted above, ADS was <u>required</u> to submit those materials since they were part of the record of approvals in another state.  Code of Vermont Rules 12-033-001 at § 1-1004(d)(1)(A), 1-1004(k)(2)(C); Indiana State Department of Health, *Information Necessary for Review of Technology New to Indiana* (attached as Exhibit __) ("The following information must be provided . . . A copy of approvals for the technology from other states or government units and the statutes, codes, ordinances, and other regulatory documents under which the approval was granted . . . .").  Furthermore, the fact that ADS submitted materials from the New Hampshire approval process does not mean that ADS was asking Vermont or Indiana to use the underlying Enviro-Septic test data, and indeed Presby does not allege any instance in which ADS used such data or requested that a regulator use such data.

The second clause of the third paragraph of the Settlement Agreement states that "[w]here ADS has not conducted independent testing of Geo-Flow, ADS will not claim to any regulatory or approving agency that, had ADS performed such testing, it would have equaled, surpassed, or compared favorably to test results for Enviro-Septic."  (Settlement Agreement ¶ 3;

*see* Complaint ¶ 18).  Once again, Presby fails to allege any instance in which ADS discusses how GEO-Flow would have performed relative to the Enviro-Septic test data.  Instead, Presby complains about instances in which ADS stated that GEO-Flow had been approved for use in other states at the "same sizing criteria" as Enviro-Septic.  (*See* Complaint ¶¶ 26, 29, 33-34). The Settlement Agreement does not prohibit ADS from pointing out the fact that the parties' products have been approved for use in other states under the same system sizing.

Furthermore, this second clause only applies "where ADS has not conducted independent testing of Geo-Flow."  Presby alleges that ADS had not conducted independent testing in 2009, when ADS first applied for approval in Vermont.  (Complaint ¶¶ 19-20).  However, Presby complains about alleged actions by ADS in 2012 (*see* Complaint ¶¶ 24-29, 34), and Presby does not allege that ADS had not conducted independent testing by that time (nor could Presby do so consistent with its obligations under Rule 11).

Thus, even if the alleged conduct in 2012 could be construed as ADS claiming that GEO-Flow would have performed similarly to the Enviro-Septic test data (and it cannot), Presby did not allege that "ADS ha[d] not conducted independent testing of Geo-Flow" at that time. Accordingly, Presby has failed to state a claim for a breach of the Settlement Agreement and its First Cause of Action should be dismissed.

## IV. CONCLUSION

For the foregoing reasons, ADS respectfully requests that this Court grant this Motion and dismiss the Complaint with prejudice.

Respectfully submitted,

**ADVANCED DRAINAGE SYSTEMS, INC.**

By their Attorneys

RANSMEIER & SPELLMAN
PROFESSIONAL CORPORATION


Dated:  April 29, 2014          By:          */s/ Daniel J. Mullen*

Daniel J. Mullen, Esq. (#1830)
Ransmeier & Spellman, PC
One Capitol Street, P.O. Box 600
Concord, NH  03302-0600
dmullen@ranspell.com


## CERTIFICATE OF SERVICE


I hereby certify that a copy of the within was provided to plaintiff's counsel, David Rayment, Esquire, via ECF.


*/s/ Daniel J. Mullen*

---

**CERTIFICATE OF SERVICE**

---

I hereby certify that on the ___ day of April 2014, this document was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants.

/s/_____
Daniel J. Mullen
Attorney for Defendant