Caouette v. Presby                      CV-95-587-JD   04/23/96   C

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Henry Caouette, et al.

   v.                                      Civil No. 95-587-JD

David Presby, et al.

## REPORT AND RECOMMENDATION

Henry Caouette and Geo-Flow, Inc. (collectively "Geo-Flow") move for a temporary restraining order and preliminary injunction enjoining David W. Presby and Presby Environmental, Inc. (collectively "Presby") from infringement of the '665 patent owned by Geo-Flow.  Presby objects, arguing that the '665 patent is invalid, that its own device does not infringe and that plaintiffs have not met its burden for preliminary injunctive relief as a matter of fact and law.

### FACTUAL BACKGROUND

Mr. Caouette and Mr. Presby have each been in the business of designing and installing septic systems for many years. Caouette received United States Patent 4,909,665 entitled "Fabric-Covered Structure" (referred to as the "'665 patent") on March 20, 1990.  He thereafter licensed the patent to Geo-Flow, Inc., a Maine corporation owned and operated by his son and son-in-law.  Geo-Flow, Inc. manufactures, distributes and sells

septic systems and components.  Geo-Flow, Inc., on July 30, 1992, sublicensed the '665 patent to Mr. Presby and awarded him the exclusive right to market the "Geo-Flow Leaching System" in New Hampshire and other areas.  Presby acknowledged in the licensing agreement that the '665 patent was an improvement over prior art.  Presby sold the Geo-Flow system, promoted it, and developed a promotional, installation handbook for the '665 patent and "Geo-Flow Leaching System".

   Thereafter the parties had a falling out.  Defendants claim that the sublicense was terminated.  Plaintiffs allege Presby was marketing a system which they allege infringes the '665 patent and disparaging the licensed system.  Presby claims that he has invented a product on which a patent application is pending which is not a knock-off, doesn't create any confusion to purchasers and is a substantial improvement.

   The septic systems at issue use corrugated pipes which, by definition, mean they have parallel circular ridges and valleys.  The difficulty with their use prior to the systems in issue was that the ridge portion was in contact with the fabric cover and the holes on the ridges would plug and prevent the biological mat forming properly.  Claim 1 of the '665 patent states:

    1.    In combination a fabric/grid mesh covering for a corrugated structure having peaks and valleys on its exterior surface with a plurality of perforations defined in said valleys for fluid

```
                passage,
           [A]  said fabric/grid mesh covering including
                [1]  a porous fabric
                [2]  substantially adjacent to
                [3]  a grid mesh separation structure formed
                     of
                     [i]  material with channels defined
                          therein for positioning against
                          said peaks and extending over the
                          tops of said valleys and
                     [ii] apertures
                          [a]  defined in said grid mesh
                               adjacent to and communicating
                               with said channels
                          [b]  adapted to allow fluid passing
                               from said perforations in said
                               valleys to pass through said
                               channels and grid mesh
                               apertures to said fabric
                               disposed above said peaks and
                               valleys of said corrugated
                               structure.
```

(Emphasis and outline form added).

Defendant has not supplied a copy of the claims in his patent application but his "Enviro-Septic Leaching System" is described by his expert, J. Ernest Kenney, in his affidavit as follows:

> This product is marketed under the name Enviro-Septic Leaching System and includes a corrugated plastic drain pipe having perforations in the valleys of the corrugations to permit flow of fluid from a septic system out of the pipe into the earth in which the pipe is normally buried.
>
> The pipe corrugations are covered with an inner layer of batting made up of randomly oriented thin plastic fibers forming a porous mesh contained between fine plastic netting on opposite surfaces of the batting. The batting is also held together with wide stitched plastic threads running through it at spaced intervals. The batting material is green colored and

>    the fine plastic netting is black.  The batting is
>    covered with an outer layer of felt filter material
>    having a gray color.
>
>    In use, the green batting material with its fine
>    plastic netting is placed against the peaks of the
>    corrugations of the drain pipe with the felt filter
>    material on the outside of the pipe assembly.  When so
>    assembled, one layer of the fine plastic netting and
>    the inner side of the green batting material all rest
>    against the peaks of the corrugated pipe.  However, I
>    do not observe that the fine netting or the combination
>    of the netting with the green fibers provide any
>    structure that can be equated with "channels" in
>    accordance with my interpretation of this term.  The
>    fine netting and the green fibers all contact the peaks
>    simultaneously and there are no flow-directing walls or
>    other structure that would appear to direct fluid flow
>    in any particular direction or manner.
>
>    Indeed, it is inherent in the netting structure
>    that all of the threads making up the netting lie in
>    the same plane and therefore no channels are provided
>    in any particular direction.  Moreover, the green
>    fibers contact the peaks in between the netting and
>    virtually adjacent every thread making up the netting.
>    Based on my observation, the netting virtually becomes
>    part of the batting material and the entire batting
>    assembly of randomly extending green threads and fine
>    plastic netting provide a porous structure permitting
>    fluid flow in any direction over the peaks without any
>    channeling of any kind.

(document no. 9, Affidavit of Kenney, pp. 21-22).

In addition to alleged patent infringement, plaintiffs allege that defendants copied a design and installation handbook produced for use with the Geo-Flow system and are now using it with the Enviro-Septic System.  The handbook was designed and written by Mr. Presby for use with Geo-Flow.  Defendant claims

that he was not paid by Geo-Flow for it.  However, plaintiffs have presented a contrary affidavit and a copy of a bill and credit for at least a revision.  Defendants contend that there is a striking difference in the covers although they are admittedly similar in form and substance.

## STANDARD OF REVIEW

Injunctions in patent cases, including preliminary injunctions, are authorized by Title 35, United States Code, § 283 which provides:

> The several courts having jurisdiction of cases under this title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable.

If in no other way, at least the parties agree as to the requirements to obtain a preliminary injunction (document no. 2, memorandum, p.5; document no. 9, memorandum, p.3).  The requirements to establish a preliminary injunction under 35 U.S.C. § 283 are that a party establish:  (1) a reasonable likelihood of success on the merits; (2) it will suffer irreparable harm; (3) the balance of hardships tip in its favor; and (4) it is in the public interest.  New England Braiding Co., Inc. v. A. W. Chesterton Co., 970 F.2d 878, 882 (Fed.Cir. 1992); Nutrition 21 v. United States, 930 F.2d 867, 869 (Fed.Cir. 1991);

Hybritech Inc. v. Abbott Laboratories, 849 F.2d 1446, 1451 (Fed.Cir. 1988).  This is the same standard for preliminary injunctions adopted by the First Circuit.  Campbell Soup Co. v. Giles, 47 F.3d 467, 470 (1st Cir. 1995); Gately v. Commonwealth of Mass., 2 F.3d 1221, 1224 (1st Cir.), cert. denied, ____ U.S. ____, 128 L.Ed.2d 461, 114 S. Ct. 1832 (1993).

Nevertheless, "a preliminary injunction is a drastic and extraordinary remedy that is not to be routinely granted."  Intel Corp. v. ULSI System Technology, 995 F.2d 1566, 1568 (Fed.Cir. 1993), cert. denied, _____ U.S. _____, 127 L.Ed.216, 114 S. Ct. 923 (1994).  The Federal Circuit has proscribed the standard for consideration of the four factors:

> Our rule regarding whether a preliminary injunction should be granted or denied is that the trial court should weigh and measure each of the four factors against the other factors and against the magnitude of the relief requested.  Under this rule, no one factor, taken individually, is necessarily dispositive.  If a preliminary injunction is granted by the trial court, the weakness of the showing regarding one factor may be overborne by the strength of others.  If the injunction is denied, the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned the other factors, to justify the denial and as a basic proposition, the matter lies largely in the sound discretion of the trial judge.

Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc., 908 F.2d 951, 953 (Fed.Cir. 1990) (citations omitted).

DISCUSSION

1. Likelihood of Success

To establish likelihood of success on the merits plaintiffs must prevail both as to the validity of its patent and infringement of it. Hybritech Inc., 849 F.2d at 1451. 35 U.S.C. § 282 provides in part that "[a] patent shall be presumed valid." It follows that "[t]his presumption of validity places the burden of persuasion as well as the burden of going forward on the party asserting invalidity. Stratoflex, Inc. v. Aeroquip Corp., 713 F.2d 1530, 1534, 218 USPQ 871, 875 (Fed.Cir. 1983)." Chrysler Motors, 908 F.2d at 953. Patent '665 appears as Exhibit A to the Motion for Preliminary Injunction (document no. 2).

   a. Validity.

Defendants' claim to invalidity is based upon an allegation that the patent is invalid because Anthony Corrao, not Henry Caouette, is the sole inventor. Corrao's description of his alleged invention is focused in large part upon the concept of substituting corrugated pipe for a chamber system. The only description of an alleged invention by Corrao which could be construed to implicate patent '665 is paragraph 9 of the Corrao affidavit (document no. 9, Affidavit of Corrao) in which he describes wrapping of a 10" corrugated pipe by a layer of mesh

covered with a non-woven fabric.  This statement is sufficiently broad to cover both plaintiffs' patent and defendants' pending patent application.  Plaintiffs' supplemental affidavit, attached to its Reply Memorandum (document no. 13, Supplemental Affidavit of Caouette), denies the Corrao assertion and states that Corrao's sole contribution was to suggest wrapping multiple corrugated pipes in a single set of the wraps for which plaintiffs allege inventorship.  This suggestion was deleted from the patent application.

    Corrao brought suit in the state court in Maine alleging in part co-inventorship (document no. 13, Exhibit A).  That suit was dismissed with prejudice under Rule 41(b)(1), Maine Rules of Civil Procedure (document no. 13, Exhibit C).  Particularly since that rule provides for dismissal for lack of prosecution, I do not rely on any <u>res judicata</u> bar it may have in considering that suit.  However, the lack of specificity of the Corrao affidavit together with his failure to prosecute his suit lead me to conclude that, in the face of the specific Caouette and Nitkin affidavits, Corrao's general claims of co-inventorship are unconvincing.  Defendants have failed to sustain their burden of persuasion based on Corrao.

    The second ground for defendants' claim of invalidity is based upon the affidavit of J. Ernest Kenney, Esq., defendants'

expert in patent law.  Affidavit of Kenney (with document no. 9).
This affidavit is opposed by the affidavit of William Nitkin,
Esq., plaintiffs' patent counsel (document no. 2, Affidavit of
Nitkin and document no. 13, Supplemental Affidavit of Nitkin).
The essence of the Kenney affidavit on the issue of infringement
is that if the term "channels" in the '665 patent claims includes
randomly oriented fibers the patent is invalid because it is
covered by prior art.  If "channels" does not encompass randomly
oriented fibers, but rather is restricted to a form of structural
conduit or passageway, Mr. Kenney opines, the Presby product
(which uses random fibers) does not infringe.

   Not surprisingly, Mr. Nitkin's supplemental affidavit
supports the opposite view - <u>i.e.</u>, the Caouette patent is valid
and the Presby product infringes.  The essence of the Nitkin
affidavit on the infringement issue is:  (a) the "prior art"
patents discussed by Kenney do not nullify and invalidate the
'665 patent, and (b) "channel" means ". . . any opening . . .
that allows water to pass . . ." (Supplemental Affidavit, Nitkin,
¶24).  Simply put, Nitkin states that infringement is established
by admissions (Supplemental Affidavit, Nitkin, ¶¶28-29) and by
defendants' use of every element of the claim limitations (Nitkin
Affidavit, pp. 11-12).

   In determining the meaning of claims the three prime sources

are the claims themselves, the specification and the prosecution history.  Markman v. Westview Instruments, Inc., 52 F.3d 967, 979 (Fed.Cir.), cert. denied, ____ U.S. ____, 132 L.Ed.2d 921, 116 S. Ct. 40 (1995).  The meaning of "channel" as used in the '665 claims is central to the validity and infringement issues.  The patent claims and specification are available in full as part of the record.  Only portions of the prosecution history are included in or referenced in the affidavits.  The expert affidavits are considered extrinsic evidence which, in it discretion, the court can consider as an aid to the meaning of the patent language.  Id. at 980.

Word(s) used in a claim are given their ordinary and accustomed meaning, unless from the specification or prosecution history it appears that the word(s) were used differently by the inventor.  Carroll Touch, Inc. v. Electro Mechanical Systems, Inc., 15 F.3d 1573, 1577 (Fed.Cir. 1993).  The specification "may act as a sort of dictionary, which explains the invention . . . . The caveat is that any special definition given to a work must be clearly defined in the specification."  Markman, 52 F.3d at 979-80 (internal citations omitted).  The prosecution history is viewed as an invaluable source of claim interpretation since it may evidence the patentee's own understanding of terms.  Id. at 980.  Extrinsic evidence, in addition to expert evidence includes

dictionaries and learned treatises.

The use of "channel" by the patentee to include members with apertures, fibrous materials and open-fiber material indicates a definition of "channels" which is not consistent with its usual ordinary and accustomed meaning as a directed or funneled course or passage.  The American Heritage Dictionary, Second College Edition (1982).  The definitions offered by plaintiffs from Webster's (Supplemental Affidavit of Nitkin, ¶25) reinforce, as opposed to broaden, the ordinary and accustomed meaning of channels as a course or route into or along which something is directed.  Plaintiffs, however, maintain that the specification, by its explanation of the invention, provides a definition of "channel" which includes non-oriented fibers.  (Supplemental Affidavit of Nitkin, ¶¶ 11-14).

The language of claim 1 uses "channels" as follows:

> . . . material with channels defined therein
> for positioning against said peaks . . . and
> apertures defined in said grid mesh adjacent
> to and communicating with said channels
> adapted to allow fluid . . . to pass through
> said channels and grid mesh apertures . . . .

The specification states that this grid mesh can take different forms but must have members with apertures or <u>fibrous material</u> which separates the peaks of the pipe and the fabric and which allows water or effluent to pass.  '665 patent, col. 4, lines 50-

11

58. The specification indicates that the square or rectangular plastic mesh is but one embodiment (albeit the one used in plaintiffs' manufactured product) of the channelled separation element. '665 patent, col. 3, lines 3-11, 25-32. The plastic mesh used in the manufactured product is similar or identical to that described as "one grid mesh . . . utilized successfully." '665 patent, col. 3, line 20. Other grid mesh designs include an open-fiber and a dimpled material. '665 patent, col. 5, lines 20-25.

An example used in the patent of one open-fiber embodiment is "Enkadrain material manufactured by BASF Corporation which material is an interlocked open-fiber mesh". '665 patent, col. 5, lines 12-14. The fibers of this material are as randomly oriented as those used in defendants' product. "[I]t is unlikely that an inventor would define the invention in a way that excluded the preferred embodiment, or that persons of skill in this field would read the specification in such a way." Hoechst Celanese Corp. v. BP Chemicals Ltd., 1996 WL 122850, *5 (Fed.Cir. 1996). Plaintiffs contend that it is also unlikely that an inventor would define an invention in a way that excluded an alternative embodiment. Applying this standard to the patent plaintiffs claim, conclusively shows that the inventor did intend, and define, "channel" as material with openings that

12

allow water or effluent to pass over the peaks of the corrugated pipes.

Defendants maintain, however, that the claim prosecution history contains evidence that the '665 patent did not include randomly oriented fibers.  First, as Mr. Kenney notes, the patent examiner rejected plaintiffs' initial claims which called for a means "to separate the peaks of the corrugated pipes from the fabric wrapper."  Thereafter only the claims using "material with 'channels'" survived the claim process.  The remainder of the prosecution history (Exh. 2, document no. 13) adds little to indicate whether the examiner concluded that "channel" was used as it is commonly understood or as inclusive of randomly oriented fibers.  The portions of the prosecution file provided to the court are set out as Exhibits 1 and 2 to the Supplemental Affidavit of Nitkin and Exhibit 5 to the Affidavit of Kenney.  Each expert argues sparse portions of the prosecution file but neither is persuasive.  The court does not find that the portion of the prosecution file provided adds to an understanding of the words of the claims.

Assuming for the moment that the specifications do demonstrate an "inventor-specific" definition of channels broad enough to include randomly oriented strands the defendants claim that the '665 patent is invalid because it infringes upon

existing patents, that is, it is readable on prior art.  In particular defendants say that if the '665 patent includes randomly oriented strands or fibers and netting it is then fully readable on the prior art of the full translation of the German Broere patent (Affidavit of Kenney, Exhibit 6), the French patent (Exhibit 11) and the Dutch patent (Exhibit 12).  The court agrees.  The Dutch patent of mineral wool fiber flocks over corrugated pipe covered by an open net is an equivalent structure (as opposed to equivalence under the doctrine of equivalence) to the Enkadrain type product and to defendants' product to the extent of randomly oriented strands or fibers separating the peaks of the pipe and the fabric and which allows water or effluent to pass.  This Dutch patent is a step beyond the similar German device which suggests granules instead of non-oriented fibers.  The art of the French patent specifically deals with randomly oriented fibers on a netting over corrugated pipe.  The supplemental affidavit of Nitkin does not adequately distinguish the '665 patent claims, as plaintiffs now assert them, from this prior art.  Thus, if the '665 patent includes the randomly oriented fibers it is met by the prior art and is invalid.  Markman, 52 F.3d at 979.  If it is interpreted to use "channel" as it is commonly understood the patent is valid.  As between these two meanings of channel, the correct one is the commonly

understood meaning of directed or funneled course or passage. Thus, the patent is valid.

    b.   <u>Infringement</u>.

Infringement may be established by "literal infringement" or under the "doctrine of equivalents." The owner of the patent has the burden of proof on the issue of infringement. <u>Wilson Sporting Goods Co. v. David Geoffrey & Assoc.</u>, 904 F.2d 677, 685 (Fed.Cir.), <u>cert. denied</u>, 498 U.S. 992 (1990).

> The first determination to be made is whether there is literal infringement of the patent. In making this determination, the words of the claim in the patent must be compared with the accused device. If the accused device is clearly within the claim, then infringement does exist . . . . The second test is the application of the doctrine of equivalents.

<u>Acme Highway Prod. Corp. v. D.S. Brown Co.</u>, 473 F.2d 849 (6th Cir.), <u>cert. denied</u>, 414 U.S. 824 (1973).

The defendants' product permits fluid flow over the peaks of the corrugated pipe and uses a plastic strand material between those peaks and the outer netting. The distinction, if any, centers on the lack of distinct channels in defendants' product. Channels, as noted earlier, is a distinctive characteristic of the claims of plaintiffs' patent. Defendants' product, using randomly oriented strands as it does, does not literally infringe the plaintiffs' patent.

Turning to the doctrine of equivalents, "[w]hat constitutes

equivalency must be determined against the context of the patent, the prior art, and the particular circumstances of the case." Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 609 (1950). Most generally stated, "if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form or shape." Machine Co. v. Murphy, 97 U.S. 120, 125 (1877); London v. Carson Pirie Scott & Co., 946 F.2d 1534, 1538 (Fed.Cir. 1991). The patented product and defendants' product both allow close to 100% of fabric to allow passage of fluid, the formation of a biological mat on the fabric area and use a material to separate the fabric from the peas of corrugated pipe. The only meaningful difference is the use of a channelized separator by plaintiffs versus randomly oriented fiber material by defendants.

However, "[t]he doctrine of equivalents exists to prevent a fraud on a patent not to give a patentee something which he could not lawfully have obtained from the [Patent and Trademark Office] had he tried." Wilson Sporting Goods Co., 904 F.2d at 684 (citation omitted). Here, as discussed under the "validity" section, if plaintiffs' patented claims are inclusive of randomly oriented fibers they, like defendants' product, read on the prior art and would be invalid. Channelization is a significant aspect

of plaintiffs' patent.  The limiting effect of prior art preclude a determination of infringement by defendants' product on plaintiffs' patent.  Plaintiffs do not have a reasonable likelihood of success on the merits on the issue of infringement.

2.   Irreparable Harm.

"[W]ithout a clear showing of validity and infringement, a presumption of irreparable harm does not arise in a preliminary hearing . . . ."  Nutrition 21 v. United States, 930 F.2d 867, 871 (Fed.Cir. 1991).  Plaintiffs have not made a clear showing of validity and infringement.  No presumption arises.  The evidence, by affidavit and proffer, indicates diminished royalties and sales, loss of potential customers and detrimental loss of reputation (document no. 2, Exhibit C).  Part of this loss, is due to defendants' use of a design and installation handbook for use of his product which is obviously and intentionally similar to one he designed for plaintiffs while its agent.  Whatever causes of action the latter acts may create they have not been raised independently of the infringement action.  There was insufficient evidence of difficulty in calculating loss of market share or lost profits to justify the extraordinary relief of a preliminary injunction.  Further, there was no evidence or analysis as to the inadequacy of money damages.  Cf. H.H. Robertson, Co. v. United Steel Deck, Inc., 820 F.2d 384, 390

(Fed.Cir. 1987), <u>overruled on other grounds by Markman v. Westview Instruments, Inc.</u>, 52 F.3d 967, 977 (Fed.Cir. 1995). Plaintiffs have not sustained its burden of irreparable harm.

3.   <u>Balance of Hardships</u>.

The parties offered little on either of those requirements. Essentially, if an injunction is issued defendants cannot market its new product and plaintiffs avoid all harm.  If it does not issue and plaintiffs succeed it is entitled to damages.  Here neither party has a clear advantage.  <u>Hybritech Inc. v. Abbott Laboratories</u>, 849 F.2d 1446, 1457-58 (Fed.Cir. 1988).

4.   <u>Public Interest</u>.

"Only rarely will the public interest be seriously affected by the grant or denial of a preliminary injunction in a patent case."  Donald S. Chisum, Patents § 20.04[1][f][ii](1996).  "The public has an interest both in protecting patent rights and ensuring that markets are competitive." <u>Alliance Research Corp. v. Telular Corp.</u>, 859 F. Supp. 400, 406 (C.D. Calif. 1994).  The balance in the area of public interest is directly linked to the likelihood of success since the public interest in protecting patents against infringement by preliminary injunction should be reserved to those likely to succeed.

CONCLUSION

For the reasons set forth, the plaintiffs have failed to

carry the substantial burden associated with a preliminary injunction request.  It is recommended that plaintiffs' Motion for Preliminary Injunction be denied.

Any objections to this report and recommendation must be filed within ten days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See Unauthorized Practice of Law Committee v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

_____
James R. Muirhead
United States Magistrate Judge

Date:   April 23, 1996

cc:     Mary E. Fougere, Esq.
        Joseph J. Byk, Esq.