### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW HAMPSHIRE

Presby Environmental, Inc.

   v.                                          Civil No. 13-cv-355-LM
                                                Opinion No. 2014 DNH 122
Advanced Drainage Systems, Inc.

### O R D E R

   Presby Environmental, Inc. ("Presby") has sued Advanced Drainage Systems, Inc. ("ADS") based on ADS's alleged violation of a settlement agreement previously entered into by the parties.  Now pending before the court are ADS's Motion for Judgment on the Pleadings and Presby's Motion for Leave to Amend Complaint.  For the reasons that follow, the Motion for Judgment on the Pleadings is GRANTED IN PART and DENIED IN PART and the Motion for Leave to Amend Complaint is DENIED.

### Factual Background[1]

   This dispute is the latest iteration in a long-running legal feud between Presby and ADS.  Presby is a New Hampshire-based company that develops, manufactures, tests and sells products for septic systems.  Compl. ¶ 2.  ADS is a Delaware corporation and occupies a similar niche in the market.  ADS manufactures pipe that is used in agricultural, commercial and

---

[1] The facts are summarized from Presby's Complaint and Demand for Jury Trial (Document No. 1; cited as "Compl.").

highway drainage systems, as well as septic and leaching systems.  Id. ¶ 3.

Presby has developed an in-ground waste treatment disposal system known as "Enviro-Septic."  Id. ¶ 7.  ADS competes with Presby by marketing and selling its own in-ground septic system known as "GEO-Flow."  Id. ¶ 8.  Both Enviro-Septic and GEO-Flow are innovative products designed to replace traditional septic systems, and both are subject to regulation by certain environmental authorities.  Id. ¶ 10.

Presby and ADS first found themselves on opposite sides of a courtroom in the mid-1990s in a patent infringement dispute brought by ADS.  Id. ¶ 11.  Then, in 2008, Presby brought a suit of its own (the "2008 Litigation").[2]  Id. ¶ 12.   Presby alleged that ADS was securing approvals for the GEO-Flow system from various state environmental regulators by improperly relying on testing that Presby had conducted on its own Enviro-Septic system.  Id.  In essence, Presby alleged that ADS was seeking to avoid the cost of conducting its own tests of GEO-Flow, and instead was bootstrapping Presby's test results by falsely representing to regulators that Enviro-Septic and GEO-Flow were functionally equivalent.  Id. ¶ 13.  Presby also alleged that

---

[2] See Presby Envtl., Inc. v. Advanced Drainage Sys., Inc., No. 08-cv-434-JL (D.N.H.).

ADS infringed several of its copyrights by including Presby's materials in certain product manuals.  Id. ¶ 14.

The 2008 Litigation came to a close in May 2009 when the parties entered into a Settlement Agreement and Mutual Release (the "Settlement Agreement").  Id. ¶ 16.  Two provisions of the Settlement Agreement are of central importance to this dispute. First, the Settlement Agreement provided that "ADS will not represent in the marketplace that GEO-Flow is the 'functional equivalent' of Enviro-Septic."  Id. ¶ 17.  Second, it provided that "[w]ith respect to any regulatory or approval processes regarding the use and approval of [GEO-Flow], ADS agrees that it will not use any test data relative to Enviro-Septic, as though such data were applicable to [GEO-Flow]."  Id. ¶ 18.

The instant dispute involves alleged breaches of the Settlement Agreement by ADS.  Specifically, Presby alleges that, in 2009, an individual by the name of Dick Batchelder ("Batchelder"), on behalf of ADS, made a series of representations to the Vermont Department of Environmental Conservation (the "Vermont DEC") regarding the functional equivalence of GEO-Flow and Enviro-Septic.  Id. ¶¶ 19-31.  These representations included providing the Vermont DEC with a copy of a document prepared by the New Hampshire Department of

3

Environmental Services (the "NH DES") that compared the two systems.  Id. ¶ 21.

Also in 2009, Batchelder (again allegedly acting on behalf of ADS) provided a copy of the NH DES report to the Indiana State Department of Health in connection with regulatory proceedings there.  Id. ¶¶ 32-34.  Batchelder also allegedly made various additional statements to Vermont and Indiana regulators suggesting that GEO-Flow and Enviro-Septic were similarly-sized and functionally equivalent.  Id. ¶¶ 33-34.

Finally, the complaint alleges that ADS provided similar information to environmental regulators in Massachusetts and New York.  Id. ¶¶ 36-37.  Presby has brought this action seeking damages for breach of the Settlement Agreement and violation of the Lanham Act, 15 U.S.C. § 1125 et seq.

### Presby's Motion for Leave to Amend Complaint

Presby has moved for leave to amend its complaint in order to add several allegations, including those relating to additional statements made by employees and other representatives of ADS regarding the functional equivalence of Enviro-Septic and GEO-Flow.  Many of these statements were allegedly made at an industry "field day" event in New Hampshire in October 2013.

4

Certain aspects of the procedural posture are of relevance to this discussion.  First, the court previously issued a scheduling order that gave Presby until December 30, 2013, to amend its pleadings.  Second, however, Presby's motion for leave to amend was not filed until May 2014, after ADS had filed its dispositive motion for judgment on the pleadings.

I.   Legal Standard

The parties dispute the applicable standard of review. Presby contends that the matter should be governed by Federal Rule of Civil Procedure 15.  Rule 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2). And, Rule 15(d) further provides that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  Id. at 15(d).  Rule 15 generally presents a favorable standard for parties seeking to amend a pleading, as "leave to amend is to be freely given unless it would be futile or reward . . . undue or intended delay." Resolution Trust Corp. v. Gold, 30 F.3d 251, 253 (1st Cir. 1994) (citations omitted) (internal quotation marks omitted).

Unfortunately for Presby, Rule 15 no longer governs these proceedings, because "[o]nce a scheduling order is in place, the liberal [Rule 15 standard] is replaced by the more demanding 'good cause' standard of Fed. R. Civ. P. 16(b)." Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004); see also O'Connell v. Hyatt Hotels, 357 F.3d 152, 155 (1st Cir. 2004) (holding the same and noting that "[f]or Rule 16(b) to operate effectively, litigants cannot be permitted to treat a scheduling order as a frivolous piece of paper idly entered, which can be cavalierly disregarded without peril") (citations omitted) (internal quotation marks omitted).  Thus, Presby's motion for leave to amend must be governed by Rule 16(b)(4), which provides that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).

This good cause standard represents a high hurdle.  As an initial matter, a court "may extend a scheduling order deadline on a showing 'of good cause if the [deadline] cannot reasonably be met despite the diligence of the party seeking the extension.'" O'Connell, 357 F.3d at 154 (quoting Advisory Committee Notes to the 1983 Amendments to Fed. R. Civ. P. 16(b)).  And, the hurdle to show good cause becomes even higher where it can be demonstrated that the party seeking leave to amend knew (or should have known) about the facts at issue prior

6

to the deadline for amendments.  See, e.g., Trans-Spec Truck

Serv. v. Caterpillar Inc., 524 F.3d 315, 327 (1st Cir. 2008).

Finally, a showing of good cause is made even more difficult

where the opposing party has filed a dispositive motion prior to

the motion for leave to amend, or amendment would otherwise

result in prejudice to the opposing party.  See Steir, 383 F.3d

at 12.

II.  Discussion

     Presby has failed to demonstrate the good cause necessary

to amend its complaint at this late hour.  A review of Presby's

proposed amended complaint reveals that Presby seeks to add

allegations regarding the following:

- Practices whereby ADS surreptitiously encouraged contractors to install GEO-Flow instead of Enviro-Septic, without the homeowner's knowledge.

- Batchelder's statement, sometime fairly soon after execution of the Settlement Agreement, that "ADS never should have signed the [] Settlement Agreement."

- Statements made by ADS employees and representatives at the October 2013 industry field day event likening GEO-Flow to Enviro-Septic.

     Presby had information about each of these issues at the

time it filed its initial complaint and, in any event, as of the

December 30, 2013, deadline to amend its pleadings.  In support

of its motion for leave to amend, Presby included a series of affidavits from, among others, several of its employees and officers.  In one of these affidavits, David Presby, Presby's president, states that "[o]ver the years, my employees and I have gone to several sites where homeowners have called us with problems regarding their Enviro-Septic systems. . . . However, upon arrival . . . we found that in fact [GEO-Flow] had been substituted and installed without their knowledge."  See Aff. of David Presby ¶¶ 7, 9, Exh. 3 to Presby's Mot. for Leave to Amend Compl.  Mr. Presby's characterization of these events as having taken place "over the years" suggests that Presby has long known about this situation.

Mr. Presby's affidavit also establishes that Presby was long-aware of Batchelder's statements regarding the Settlement Agreement.  It states that "[s]ometime in the year or two after signing the [Settlement Agreement in May 2009] . . . I attended an industry conference where Dick Batchelder told me that ADS never should have signed the Settlement Agreement."  Id. ¶ 5.  Thus, these statements must have been made in 2010 or 2011, in either case long before these proceedings.

Finally, Presby concedes – on page two of its motion for leave to amend, no less – that "[a]t the time Presby initially brought suit, it had second- and third-hand information about

[ADS's] breaches of the Settlement Agreement, principally via statements allegedly made by ADS employees and representatives at training seminars, classes, trade shows and similar places attended by industry professionals." <u>See</u> Presby's Mot. for Leave to Amend Compl. ¶ 5.  Presby attempts to explain that it took time to obtain detailed information about these alleged breaches.  But, not only does the complaint fail to even allude to these issues, but a full three months passed between the industry field day event in early October 2013 and the deadline to amend the pleadings on December 30, during which Presby could have amended the complaint to lodge these allegations.

Presby had substantial knowledge of all of the allegations that it now seeks to add prior to the deadline for amending its pleadings, and Presby's motion to amend was filed subsequent to a dispositive motion.  What is more, allowing Presby's proposed amendments would prejudice ADS by imposing added discovery costs and causing a delay in trial.  In light of these considerations, Presby has failed to demonstrate the good cause necessary under Federal Rule of Civil Procedure 16(b)(4) to merit amendment of its complaint.  Therefore, Presby's motion for leave to amend is denied.

**ADS's Motion for Judgment on the Pleadings**

ADS has moved for judgment on the pleadings with respect to both the breach of contract and Lanham Act claims.

I.   Legal Standard

A party may move for judgment on the pleadings "[a]fter the pleadings are closed [] but early enough not to delay trial . . . ." Fed. R. Civ. P. 12(c).  "The standard for evaluating a Rule 12(c) motion . . . is essentially the same as that for deciding a Rule 12(b)(6) motion." Pasdon v. City of Peabody, 417 F.3d 224, 226 (1st Cir. 2005).  The plaintiff must make factual allegations sufficient to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is facially plausible when it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).  In deciding such a motion, the court views the facts contained in the pleadings in the light most favorable to the nonmovant and draws all reasonable inferences in his favor. Zipperer v. Raytheon Co., Inc., 493 F.3d 50, 53 (1st Cir. 2007).  "Judgment

10

on the pleadings is proper 'only if the uncontested and properly
considered facts conclusively establish the movant's entitlement
to a favorable judgment.'"   Id. (quoting Aponte-Torres v. Univ.
of P.R., 445 F.3d 50, 54 (1st Cir. 2006)).

II.   Discussion

    A.   Count 1: Breach of Contract

    ADS seeks judgment in its favor on Presby's claim for
breach of the Settlement Agreement.  As an initial matter, the
Settlement Agreement is governed by New Hampshire law.  See
Settlement Agreement ¶ 7 (Document No. 14).  And, accordingly,
its interpretation is a question of law. Audette v. Cummings,
82 A.3d 1269, 1273 (N.H. 2013).  Courts are to "give the
language used by the parties its reasonable meaning, considering
the circumstances and the context in which the agreement was
negotiated, and reading the document as a whole."  Id.

    Two provisions of the Settlement Agreement are principally
at issue.  The full text of those provisions reads as follows:

> ADS will not represent in the marketplace that
> [GEO-Flow] is the "functional equivalent" of
> Enviro-Septic.  Provided, however, ADS is not
> otherwise limited in advertising or marketing
> [GEO-Flow] or responding, consistent with
> applicable law, to competitive claims of
> [Presby].  ADS will send a letter to each of
> its distributors (copying [Presby]) instructing
> each distributor that it is not to represent to
> purchasers or potential purchasers of [GEO-
> Flow] that [GEO-Flow] is the "functional

11

equivalent" of Enviro-Septic.  ADS will provide
a copy of this letter to [Presby] prior to its
distribution.

                    . . .

With respect to any <u>regulatory or approval
processes</u> regarding the use and approval of
[GEO-Flow], ADS agrees that it will not use any
test data relative to Enviro-Septic, as though
such data were applicable to [GEO-Flow].  Where
ADS has not conducted independent testing of
[GEO-Flow], ADS will not claim to <u>any
regulatory or approving agency</u> that, had ADS
performed such testing, it would have equaled,
surpassed, or compared favorably to test
results for Enviro-Septic.  To the extent
testing is required by a particular regulatory
or approving agency, ADS will rely on test
results relating specifically to [GEO-Flow] or
test results available in the public domain
other than test data relative to Enviro-Septic.
If a regulatory or approving agency conducts or
sponsors testing of both Enviro-Septic and
[GEO-Flow], nothing in this paragraph shall bar
the use of the data generated and results of
such testing in any other context or for any
other purpose.

Settlement Agreement ¶¶ 1, 3 (emphasis added).  Presby alleges

that ADS's disclosures and representations to state regulators

in Vermont, Indiana, New York and Massachusetts constitute

breaches of these two provisions.

> i.   Representations of Functional Equivalence "In the
>       Marketplace"

Presby has not stated a plausible claim for breach of the

provision related to marketplace representations of functional

equivalence, because the plain meaning of this provision would

12

exclude representations made solely to government regulators. The complaint describes the parties' 2008 Litigation as involving ADS's alleged use of Presby's test results in seeking regulatory approval, and the infringement of Presby's copyrights in several product manuals.  See Compl. ¶¶ 13-14.

The Settlement Agreement, which purported to resolve the 2008 Litigation, included two separate provisions to address these distinct issues.  The first above-cited provision bars marketplace representations by ADS as to the functional equivalence of GEO-Flow and Enviro-Septic.  The language and circumstances of this provision plainly denote its applicability to representations made in the context of advertising and marketing, and not to efforts by ADS to secure regulatory approvals.  The complaint alleges that ADS made representations to environmental regulators in four states in order to seek approval for the marketing and sale of GEO-Flow systems.  It does not allege, however, that ADS made any additional representations "in the marketplace" or elsewhere.

Representations made to government regulators would be captured under the second above-cited provision, relating to "regulatory or approval processes."  Considering the reasonable meaning of the Settlement Agreement, the circumstances of the 2008 Litigation under which it was negotiated, and reading the

document as a whole (including the two cited provisions),
Audette, 82 A.3d at 1273, the court finds that Presby has not
alleged facts suggesting that ADS made representations "in the
marketplace" in violation of the Settlement Agreement.

>           ii.   Use of Test Data "With Respect to Any Regulatory
>                 or Approval Processes"

On the other hand, Presby has adequately alleged that ADS
violated the provision of the Settlement Agreement barring ADS
from using "test data relative to Enviro-Septic" in the context
of "regulatory or approval processes."  For example, the
complaint alleges that ADS submitted to the Vermont DEC a
document prepared by the NH DES comparing GEO-Flow and Enviro-
Septic.[3]  Compl ¶ 21.  And, in subsequent conversations, ADS is
alleged to have represented to the Vermont DEC that other states
had approved GEO-Flow based on its similar sizing and functional
equivalence to Enviro-Septic.  Id. ¶¶ 25, 26.  ADS also
allegedly made similar representations to regulators in Indiana.
Id. ¶¶ 32-34.  Thus, Presby has plausibly stated a claim that
ADS violated the Settlement Agreement when it made these
representations and disclosures to state regulators.

---

[3] ADS maintains that it was required by law to provide these
materials to Vermont regulators.  Nothing in this Order bars ADS
from using this defense at trial.

In sum, Presby may proceed with its claim for breach of the Settlement Agreement solely as it relates to breach of the provision barring ADS's use of certain test data in regulatory or approval processes.  Presby is not entitled to proceed on its claim for breach of the Settlement Agreement relating to marketplace representations of functional equivalence.

B.   Count 2: Lanham Act

Presby seeks relief under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  Section 1125(a) "creates two distinct bases of liability: false association and false advertising." Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1384 (2014).  It is not immediately apparent whether Presby seeks to proceed on a false association theory, a false advertising theory, or both.  But, regardless, ADS is entitled to judgment because Presby has failed to state a plausible Lanham Act claim under either theory.

i.   False Association

The so-called "false association" provision of the Lanham Act provides as follows: "[a]ny person who . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading

representation of fact, which is <u>likely to cause confusion</u>, or
to cause mistake, or to deceive as to the affiliation,
connection, or association of such person with another person,
or as to the origin, sponsorship, or approval of his or her
goods, services, or commercial activities by another person
. . . shall be liable in a civil action . . . ." 15 U.S.C. §
1125(a)(1)(A) (emphasis added).  Generally, claims brought under
the false association provision involve the alleged misuse of a
trade or servicemark by the defendant.  <u>See</u>, <u>e.g.</u>, <u>Oriental Fin.</u>
<u>Group, Inc. v. Coop. De Ahorro Crédito Oriental</u>, 698 F.3d 9, 16
(1st Cir. 2012); <u>Shell Co. (P.R.) v. Los Frailes Serv. Station</u>,
605 F.3d 10, 21 (1st Cir. 2010); <u>Flynn v. AK Peters, Ltd.</u>, 377
F.3d 13, 19 (1st Cir. 2004).

 But, regardless of the genesis of the claim, the
dispositive legal issue concerns customer confusion.  <u>WCVB-TV v.</u>
<u>Bos. Athletic Ass'n</u>, 926 F.2d 42, 44 (1st Cir. 1991).  "[T]he
law has long demanded a showing that the allegedly infringing
conduct carries with it a likelihood of confounding an
appreciable number of reasonably prudent purchasers exercising
ordinary care."  <u>Int'l Ass'n of Machinists & Aerospace Workers,</u>
<u>AFL-CIO v. Winship Green Nursing Ctr.</u>, 103 F.3d 196, 200 (1st
Cir. 1996).

Review of the complaint reveals that Presby has not made a
single allegation regarding the confusing effect of ADS's
actions on consumers (or on anyone else for that matter).  The
only relevant allegations involve ADS's representations to state
environmental regulators, but the complaint is silent as to
consumer confusion that might result from these actions.

Presby makes two arguments on this issue that must be
addressed.  First, Presby contends that deliberately false
statements, made with an intent to deceive, do not require
accompanying allegations of consumer confusion.  See Cashmere &
Camel Hair Mfrs. Inst. v. Saks Fifth Ave., 284 F.3d 302, 311
(1st Cir. 2002) ("Where the advertisement is literally false, a
violation may be established without evidence of consumer
deception.").  In advancing this argument, Presby conflates the
legal requirements for a false association claim with those for
a false advertising claim.  While a false advertising claim
involving a "literally" false statement may proceed in the
absence of allegations regarding consumer confusion, the First
Circuit has emphasized the need for evidence of confusion to
proceed on a theory of false association.  Winship Green Nursing
Ctr., 103 F.3d at 200.

Second, Presby refers the court to the affidavit of David
Presby and its content regarding the surreptitious installation

of GEO-Flow instead of Enviro-Septic at certain job sites.  As
an initial matter, having denied Presby's motion for leave to
amend the complaint (to which Mr. Presby's affidavit was
appended), the court declines Presby's invitation to consider
these materials.  See Collier v. City of Chicopee, 158 F.3d 601,
602-03 (1st Cir. 1998) (noting that a motion for judgment on the
pleadings must be converted to one for summary judgment if the
court considers material outside the pleadings).

     What is more, even if the court were to consider these
claims, it would do little to change the equation.  Isolated
incidences of swapped septic systems are not tantamount to
"confounding an appreciable number of reasonably prudent
purchasers exercising ordinary care." Winship Green Nursing
Ctr., 103 F.3d at 200.  For all of these reasons, Presby has
failed to state a claim for false association.

          ii.  False Advertising

     Presby would fare no better were it pursuing a false
advertising theory.  The Lanham Act's false advertising
provision provides that "[a]ny person who . . . uses in commerce
any word, term, name, symbol, or device, or any combination
thereof, or any false designation of origin, false or misleading
description of fact, or false or misleading representation of
fact, which . . . in commercial advertising or promotion,

18

misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action . . . ." 15 U.S.C. § 1125(a)(1)(B). To prove a false advertising claim, a plaintiff must demonstrate that: "(1) the defendant made a false or misleading description of fact or representation of fact <u>in a commercial advertisement</u> about his own or another's product; (2) the misrepresentation is material . . . (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation . . . ." Cashmere & Camel Hair Mfrs. Inst., 284 F.3d at 310-11 (emphasis added).

ADS is entitled to judgment because Presby has not pled facts suggesting that ADS engaged in commercial advertising of any kind.  The complaint merely alleges that ADS made a series of representations to environmental regulators in Vermont, Indiana, Massachusetts and New York that compared GEO-Flow to Enviro-Septic.

To constitute "commercial advertising" for purposes of the Lanham Act, however, the representation in question must "(a)

constitute commercial speech (b) made with the intent of influencing potential customers to purchase the speaker's goods or services (c) by a speaker who is a competitor of the plaintiff in some line of trade or commerce and (d) disseminated to the consuming public in such a way as to constitute advertising or promotion." Podiatrist Ass'n v. La Cruz Azul de P.R., Inc., 332 F.3d 6, 19 (1st Cir. 2003) (citations omitted) (internal quotation marks omitted).  "To constitute advertising or promotion, commercial speech must at a bare minimum target a class or category of purchasers . . . not merely particular individuals." Id.  "Thus, to pass the pleading threshold . . . a plaintiff at the very least must identify some medium or means through which the defendant disseminated information to a particular class of consumers." Id. at 19-20.

Courts have consistently found that statements made to government regulators do not constitute commercial advertising. See, e.g., Caldon, Inc. v. Advanced Measurement & Analysis Grp., Inc., 515 F. Supp. 2d 565, 578-79 (W.D. Pa. 2007); Radolf v. Univ. of Conn., 364 F. Supp. 2d 204, 222 (D. Conn. 2005).  And, this makes sense because statements made to regulators generally are not intended to influence consumer choice.  See In re Warfarin Sodium Antitrust Litig., 1998 U.S. Dist. LEXIS 19555, at *42 n.13 (D. Del. Dec. 7, 1998), rev'd on other grounds, 214

F.3d 395 (3d Cir. 2000) (noting that petitions by the defendant to several governmental agencies were not commercial speech because they did not propose a commercial transaction).

Presby seeks to circumvent the commercial advertising requirement by taking the position that the state environmental regulators to which ADS made its representations are "gate keepers," whose approval is a necessary prerequisite to ADS's ability to market GEO-Flow in those states.  Presby does not cite – and the court has been unable to find – any authority standing for this proposition.  This being the case, Presby's false advertising claim must necessarily be dismissed because Presby has not alleged facts suggesting that ADS engaged in improper commercial advertising in violation of the Lanham Act.

## Conclusion

For these reasons, Presby's Motion for Leave to Amend Complaint (Document No. 20) is denied, and ADS's Motion for Judgment on the Pleadings (Document No. 12) is granted in part and denied in part.  Judgment shall enter in favor of ADS on Presby's Lanham Act claim.  And, while Presby may proceed with its claim for breach of the Settlement Agreement relating to the use of test data in regulatory and approval processes, Presby's claim for breach of the Settlement Agreement relating to

representations of functional equivalence in the marketplace is dismissed.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

September 30, 2014

cc:   David W. Alexander, Esq.
      Mark Sutherland Derby, Esq.
      Daniel J. Mullen, Esq.
      David W. Rayment, Esq.
      Heather L. Stutz, Esq.